UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MYNOR GARCIA, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Civil Action No. 16-cv-11673-ADB |
| | * | |
| JOSEPH D. MCDONALD, | * | |
| *in his capacity as Sheriff of Plymouth County* | * | |
| *House of Corrections* | * | |
| | * | |
| Respondent. | * | |

MEMORANDUM AND ORDER

September 23, 2016

BURROUGHS, D.J.

## I.  Introduction

Currently before the Court are three motions relating to Petitioner Mynor Garcia's detention by United States Immigration and Customs Enforcement ("ICE") at the Plymouth County House of Corrections.  Mr. Garcia has filed an emergency motion seeking the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2241 ordering his release from immigration detention [ECF No. 3] as well as a motion to expedite the hearing of his habeas petition.  [ECF No. 20].  Respondent[1] followed with a motion to dismiss for failure to state a claim.  [ECF No. 17].

---

[1] Sheriff McDonald is the nominal respondent in this case and is represented by the U.S. Attorney's Office. In his Petition for a Writ of Habeas Corpus, Mr. Garcia alleged that he is detained under Sheriff McDonald's day-to-day custody in the Plymouth County Correctional Facility through an agreement with the Department of Homeland Security ("DHS").  ICE is a division of DHS.

1

Judge Leo Sorokin, who was initially assigned to this case when it was filed on August 16, 2016, conducted a motion hearing on September 1, 2016, before the case was transferred to this Court. This Court has reviewed the transcript of Judge Sorokin's hearing and also held a further hearing and conference with counsel for the parties on September 21, 2016.

For the following reasons, Mr. Garcia's motion for the grant of a writ of habeas corpus is ALLOWED IN PART and DENIED IN PART. The Court declines to require the immediate release of Mr. Garcia, but does order that Mr. Garcia be afforded a bond hearing before an Immigration Judge as soon as reasonably possible. Respondent's motion to dismiss for failure to state a claim is DENIED and Petitioner's motion to expedite is DENIED AS MOOT with leave to renew if appropriate.

## II.    Factual and Procedural Background

Mr. Garcia is a citizen of Guatemala. He entered the United States without inspection on or about February 2, 2002, at the age of 17, and has remained in the United States since that time. Mr. Garcia has previously worked as a mechanic and for Market Basket. He has a son who is six years old, as well as other family members in the area who support his release. Mr. Garcia was arrested by the Lawrence police three times from 2004 to 2006 for crimes including assault and battery, leaving a scene after property damage, and threatening and false license. Each of these cases was dismissed.

On March 21, 2010, Mr. Garcia was violently attacked by members of a gang in Lawrence, Massachusetts. He was kidnapped by gang members, pushed down a flight of stairs, beaten with brass knuckles, and burned repeatedly with an iron, before being left for dead. He survived the attack and has been cooperating with the Government in the investigation and

prosecution of members of the gang.  Mr. Garcia's cooperation with the Government continues to the present, and he is a potential witness at a trial scheduled to begin later this fall.

On July 28, 2011, Mr. Garcia was arrested for possession of cocaine with intent to sell and possession of a firearm without an FID card.  He pled guilty to conspiracy to distribute cocaine and possession with intent to distribute and received a 66-month sentence, which was completed on November 4, 2015.  On June 9, 2015, prior to the end of his criminal sentence, Mr. Garcia was served by ICE with a Form I-851, Notice of Intent to Issue a Final Administrative Removal.  This led to the entry of a final removal order against Mr. Garcia on June 15, 2015 based on his criminal history.

After completing his sentence on November 4, 2015, Mr. Garcia remained in detention until he was taken into ICE custody on November 23, 2015.  On November 25, 2015, Mr. Garcia told ICE that he feared returning to Guatemala.  The United States Customs and Immigration Service ("USCIS") then interviewed Mr. Garcia and found that he did not have a credible fear of returning to Guatemala.

On December 14, 2015, Mr. Garcia was transferred, through a writ of habeas corpus, to the physical custody of the United States Marshals Service ("USMS") in connection with his ongoing cooperation with the gang-related investigation and then returned to the custody of ICE on March 8, 2016, where he has remained since.  Despite the change in the location of Mr. Garcia's confinement between December 14, 2015 and March 8, 2016, it appears that he remained in detention pursuant to ICE's immigration detention authority or this Court has not been made aware of any basis for his ongoing detention other than his immigration status.

On March 31, 2016, Mr. Garcia filed an application for a U visa.  According to USCIS, "[t]he U nonimmigrant status (U visa) is set aside for victims of certain crimes who have

suffered mental or physical abuse and are helpful to law enforcement or government officials in the investigation or prosecution of criminal activity." Mr. Garcia appears to at least facially meet this criteria given that he was a victim of a violent crime and is assisting the government with a related investigation. A U visa requires a certification from a government officer that the applicant provided assistance to the government. In Mr. Garcia's case, United States Attorney Carmen Ortiz signed his U visa application personally. According to the U.S. Attorney's Office certification, "Mr. Garcia was extremely helpful in assisting the FBI to identify and target members of an organized kidnapping crew in Lawrence, MA" and "[t]he government prosecuted over 20 members of this gang."

In May 2016, USCIS denied Mr. Garcia's application for relief from removal based on fear of returning to Guatemala and referred him to an Immigration Judge for further proceedings. The Immigration Judge then overturned the previous determination that Mr. Garcia did not have a credible fear of returning to Guatemala and held that Mr. Garcia's fear of return was credible. As a result of this finding, Mr. Garcia was placed in withholding of removal proceedings.

According to Mr. Garcia, he was denied a bond hearing by the Immigration Judge on June 3, 2016. The Government responds that the Immigration Judge requested briefing on whether bond was appropriate on June 15, 2016, but that such briefing was not submitted. In any event, Mr. Garcia was scheduled for a merits hearing on his withholding of removal petition before Immigration Judge Paul Gagnon on September 14, 2016, but this date was rescheduled by Judge Gagnon and a new date has not yet been confirmed. Counsel for Mr. Garcia also represented at the September 21, 2016 hearing that ICE has agreed not to remove Mr. Garcia from the United States for a period of one year.

**III.   Analysis**

Mr. Garcia is seeking to stay in the United States and is pursuing two avenues through which this could be possible: (1) the U Visa application based on his status as a crime victim who assisted the government and (2) withholding of removal due to fear of returning to Guatemala. Despite the Immigration Judge's finding that Mr. Garcia has a credible fear of returning to Guatemala and the U.S. Attorney's support of his U Visa, Mr. Garcia remains in custody. Although there appears to be some dispute about whether the time with the USMS should be counted when determining the length of his immigration detention, at this point, regardless of whether the time with the USMS is counted or not, Mr. Garcia has spent more than six months in immigration detention since the completion of his criminal sentence. Further, having been presented with no other legal basis for Mr. Garcia's ongoing detention other than immigration detention pursuant to ICE's statutory authority, this Court concludes that Mr. Garcia has now spent more than ten months in immigration detention.

There also seems to be some dispute about the statutory basis for his detention. If his removal order is considered to be final then Mr. Garcia is being held under the authority of 8 U.S.C. § 1231 which provides that an alien who has been ordered removed from the United States shall be detained. If, however, the order is deemed to be not final given the pendency of the withholding of removal proceeding, then he is being held under the authority of 8 U.S.C. § 1226(c), which provides for the detention of aliens convicted of certain crimes after their release from prison.

The Government contends that Mr. Garcia is detained pursuant to 8 U.S.C. § 1231(a)(1) and (2). These statutory provisions provide that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days" and that "[d]uring the removal period, the Attorney General shall detain the alien." In <u>Zadvydas v. Davis</u>,

533 U.S. 678 (2001), the Supreme Court evaluated the permissible length of a detention under Section 1231 following a final order of removal that did not result in the detained alien actually being removed from the United States. Recognizing that endless detention posed due process problems, the Court held that detention of aliens subject to a final removal order under Section 1231 was presumptively reasonable for up to six months. Id. at 701. However:

> After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Id. The Zadvydas court also noted that:

> [T]he habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions.

Id. at 699-700. Regardless of whether the time with the USMS is counted or not, Mr. Garcia's detention now exceeds the presumptively reasonable six-month period. Based on the arguments made by counsel for Mr. Garcia, the Court also questions whether there is a significant likelihood of Mr. Garcia's removal in the reasonably foreseeable future, given his U Visa application, his fear of returning to Guatemala and the litigation around that, the ongoing criminal proceedings involving those against whom he is cooperating, his withholding of removal application and the 1-year stay already granted by ICE. Given the length of his detention and the apparent unlikeliness of removal in the foreseeable future, coupled with the

6

schizophrenia within the government as to whether he be allowed to stay or forced to go, this Court finds that, in the unusual circumstances of this case, if Mr. Garcia is in fact being held pursuant to 8 U.S.C. § 1231, then he should have a hearing to determine whether his ongoing detention under 8 U.S.C. § 1231 is consistent with due process under the standard enunciated by Zadvydas and whether there are conditions that would assure his presence at the moment of removal, should that moment arrive.[2]

Alternatively, if, as Mr. Garcia contends, he is more likely being held pursuant to 8 U.S.C. § 1226 rather than 8 U.S.C. § 1231, he is still, in the view of this Court, entitled to a bond hearing.  8 U.S.C. § 1226, governs where there is no final order of removal.  See Zadvydas, 533 U.S. at 683.  While ICE did secure a final order of removal against Mr. Garcia in June 2015 pursuant to 8 U.S.C. § 1228(b), Mr. Garcia has since applied for withholding of removal and has received a credible fear determination.  While the issue does not appear to have been resolved within the First Circuit, other courts have concluded that the filing for withholding of removal negates the "final" status of the removal order, meaning that the authority for Mr. Garcia's detention would no longer be 8 U.S.C. § 1231 but would instead revert to 8 U.S.C. § 1226.  See, e.g., Castillo v. ICE Field Office Director, 907 F.Supp.2d 1235, 1241 (W.D. Wash. 2012) (stating that "because Petitioner's application for withholding of removal is pending, he is

---

[2] In its Motion to Dismiss for Failure to State a Claim, Respondent argued that Mr. Garcia had not been detained for six months and had not demonstrated that there was no significant likelihood of removal in the reasonably foreseeable future.  On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts as true all well-pleaded facts in the light most favorable to the plaintiff and draws all reasonable inferences from those facts in favor of the plaintiff.  United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011). Given this deferential standard, the Court finds that the plaintiff has alleged sufficient facts regarding the length of his detention and the likelihood of removal to withstand a motion to dismiss and Respondent's Motion to Dismiss for Failure to State a Claim is therefore denied.

currently not subject to a final reinstated order of removal."); Uttecht v. Napolitano, No. 8:12CV347, 2012 WL 5386618 at *2 (D. Neb. Nov. 1, 2012) (reinstated order of removal did not constitute final administrative order of removal during pendency of withholding of removal request); Pierre v. Sabol, No. 1:11-CV-2184, 2012 WL 1658293 at *4 (M.D. Pa. May 11, 2012) ("Petitioner still has an application for withholding of removal pending before the IJ, which means a decision has not yet been made on whether he will be removed from the United States. It also means the reinstated order of removal has not yet become administratively final because the IJ has yet to rule on the application.").[3]

In Reid v. Donelan, 819 F.3d 486, 497 (1st Cir. 2016), the First Circuit concluded that continued detention under 8 U.S.C. § 1226(c) requires an individualized reasonableness determination because "[t]he concept of categorical, mandatory, and indeterminate detention raises severe constitutional concerns." Id. at 494. The Reid court rejected the use of a six-month presumption of reasonableness requirement from Zadvydas as inconsistent with the purpose of the statute, which was "to categorically deny bond hearings to a class of aliens who may pose these threats [of absconding or harming society]." Id. at 499. Instead, in conducting the reasonableness review of an ongoing detention, the Immigration Judge "must evaluate whether the alien's continued detention sufficiently serves the categorical purpose of the statute." Id. Relying on Demore v. Kim, 538 U.S. 510 (2003), the Reid court explained that "[c]ategorical

---

[3] Similarly, circuit courts addressing the filing of a petition for review have found that the removal period, under Section 1231, only begins once the court has issued its order and that therefore Section 1226 governs until that time. Leslie v. A.G., 678 F.3d 265, 270 (3d Cir. 2012) ("1231 cannot explain nor authorize detention during a stay of removal pending further judicial review."); Prieto-Romero v. Clark, 534 F.3d 1053, 1059 n.5 (9th Cir. 2008) ("The more sensible reading of the statute is that if an alien files a timely petition for review and requests a stay, the removal period does not begin until the court of appeals (1) denies the motion for a stay or (2) grants the motion and finally denies the petition for review.").

detention is only permitted for a short time as 'a constitutionally valid aspect of the deportation process.'" 819 F.3d at 499 (quoting Demore, 538 U.S. at 523). The Reid court also noted that "there is a difference between the "foreseeability" of proceedings ending and the "foreseeability" of proceedings ending *adversely.* As the likelihood of an imminent *removal* order diminishes, so too does the government's interest in detention *without a bond hearing*." Id. at 500 (emphasis in original). If Mr. Garcia's detention is governed by Section 1226(c), the Court finds that he is entitled to a bond hearing to determine whether his continued detention is reasonable in light of the unique circumstances of this case. See Reid v. Donelan, 819 F.3d 486, 497 (1st Cir. 2016). Such a bond hearing should be conducted pursuant to the individualized standard explained in Reid. 819 F.3d at 500-01.

The First Circuit suggested that, in conducting this review, the Immigration Judge

> examine the presumptions upon which that categorical treatment was based (such as brevity and removability). As the actualization of these presumptions grows weaker or more attenuated, the categorical nature of the detention will become increasingly unreasonable. For example, a court might examine, inter alia, the total length of the detention; the foreseeability of proceedings concluding in the near future (or the likely duration of future detention); the period of the detention compared to the criminal sentence; the promptness (or delay) of the immigration authorities or the detainee; and the likelihood that the proceedings will culminate in a final removal order.

Id. The Court believes it best for the determination regarding bond to be made by the immigration court given that other aspects of Mr. Garcia's case are already before that court. This Court passes no judgment on whether release on bond is appropriate or not but rather leaves that to the sound discretion of the Immigration Judge.

**IV. Conclusion**

Mr. Garcia has shown that he is entitled to a bond hearing under the standards governing either 8 U.S.C. Section 1226(c) or Section 1231, particularly where at least some part of the

government has endorsed his application to stay in this country which strongly suggests that it views him not to be a danger to himself or others.  At the bond hearing, the Immigration Judge should consider whether Mr. Garcia's is currently subject to a final removal order and thus whether his current detention is governed by Section 1226 or to 1231.  Based on that determination, the Immigration Judge should apply the appropriate standard in determining whether release on bond is warranted pursuant to either Zadvydas or Reid in light of the unique circumstances of Mr. Garcia's case.

**So Ordered.**

Dated: September 23, 2016

/s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT COURT JUDGE